MIDDLETON, The HENRY. See Case No. 6,378.

## Case No. 9,535.

### MIDDLETOWN TOOL CO. v. FITCH.

[Nowhere reported; opinion not now accessible.]

## Case No. 9,536.

### MIDDLETOWN TOOL CO. v. JUDD et al.

[3 Fish. Pat. Cas. 141.][1]

Circuit Court, D. Connecticut. Feb., 1867.

PATENTS—REISSUE—VARIANCE — NEW ARTICLE — COMBINATION — DEFECT — HOW OCCURRING — STATE OF ART—UTILITY—ASSIGNMENT — PRIMA FACIE TITLE.

1. The recital, in a reissue, of a prior assignment, and the action of the commissioner in granting the patent to the assignees, make a prima facie case of title.

2. The only mode of impeaching the reissue upon the ground that it is for a different invention from the original, where there is no allegation or proof of fraud, is by showing, upon the face of the instrument, that one is so different from and repugnant to the other that the court can see that the invention described in the original is another and different one from that set forth in the reissue.
[Cited in Andrews v. Wright. Case No. 382.]

[1] [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

3. The claim in the original was for a new article of manufacture; in the reissue, it was for a combination and arrangement of the parts. The former claim was unfortunate, as changes could be made to evade the patent, while retaining the principle of the invention. The defect was curable by reissue.

4. Whether the defect occurred through inadvertence or mistake, is a question for the commissioner to decide.

5. Proof introduced to show the state of the art can have no effect on the case beyond the aid it may give the court in construing the patent. It can not be permitted to defeat the suit by antedating the invention, when that issue is not raised by the pleadings.

6. The very struggle of the parties in the suit—the complainant for the exclusive, and the defendant for the unrestrained right to manufacture the patented article—is ample evidence that it is of some utility.

7. Whenever a change or device is new and accomplishes beneficial results, courts look with favor upon it. The law in such cases has no nice standard by which to gauge the degree of mental power or inventive genius brought into play in originating the new device.
[Cited in Hoe v. Cottrell. 1 Fed. 603; Celluloid Manuf'g Co. v. Comstock & Cheney Co., 27 Fed. 360.]

8. Letters patent for an "improved self-mousing hook," granted to John R. Henshaw, October 26, 1858, and reissued February 6, 1866, are valid.

This was a bill in equity filed to restrain the defendants [Oliver Judd and others] from infringing letters patent [No. 21,879,] for an "improved self-mousing hook," granted to John R. Henshaw, October 26, 1858, assigned to complainants, and reissued to them February 6, 1866 [No. 2,166]. The claim of the original patent was as follows: "An improved article of manufacture, a self-mousing hook, having a socket e, and ear f, and a horizontal spring k; the whole made as shown and described." The claim of the reissued patent was as follows: "Locating the spring of a snap-hook, substantially as shown and described, so as to act upon points intermediate between the hinge and hook proper in combination with forming recesses for holding the spring, as set forth."

Hubbard & McFarland, for complainants.
Horace Cornwall, for defendants.

SHIPMAN, District Judge. This suit is founded on a patent for an alleged improvement in self-mousing or snap-hooks. The original patent was granted to J. R. Henshaw, and bears date October 26, 1858. This was subsequently surrendered by, and the reissue to, the present complainants. The reissue is dated February 6, 1866. The bill counts upon this reissue, and charges the respondents with infringing the right which it purports to grant to the complainants. The usual relief of an injunction and account is prayed for.

The answer admits the granting of the original patent to Henshaw, but qualifiedly denies that he was the original inventor, and that the same had not been in use before his application for letters patent. It denies that the complainants were the assignees of Henshaw

and therefore entitled to a reissue. It denies that the surrender was made for the purpose of correcting any error or inadvertence, and avers that the same was done for the purpose of enlarging the right of the complainants under the patent. It also denies that the reissue is for the same invention as the original.

The answer then sets up two patents issued to Judd, one of the respondents, one dated August 25, 1863, the other December 13, 1864, and avers that all the articles in question, the manufacture of which is charged by the bill as an infringement of the complainants' rights, have been made under and in conformity to these patents. There is also a general denial of infringement as charged in the bill.

So far as the validity of the patent is questioned on the ground that it was reissued to the complainants, there is no real doubt in the case. The reissue counts upon a prior assignment of the original patent to the complainants, and this makes, with the act of the commissioner granting the reissue to them, a prima facie case on this point.

There is no proof in the case tending to overcome this, and the court must therefore presume that the reissue was properly granted to these complainants. The reissued patent is also prima facie evidence that it is for the same invention as the original, and as there is no allegation or proof of fraud, the only mode of impeaching the reissue on this ground is, by showing upon the face of the instruments that one is so different from and repugnant to the other, that the court can see that the invention described in the reissue is another and different one than that set forth in the original. Upon a careful comparison of the two I find no such difference or repugnance. The change in the last specification from the original is descriptive and formal rather than essential, so far as the scope of the invention is concerned.

The claim in the original was for an improved article of manufacture, while in the reissue it is for a combination and arrangement of the parts. The elements of the combination, in connection with the arrangements in the reissue, are precisely the features which made the article new in the original. But claiming it as an article of manufacture was unfortunate, as changes could be made so as to evade the patent, though the principle of the invention might be retained. This was a curable defect, provided it occurred through inadvertence and mistake, and whether it did so occur was a question of fact for the commissioner to decide. The invention thus described in the reissued patent must be deemed to have been made as early as October 26, 1858, the date of Henshaw's patent. Upon the recital in the reissue and the act of the commissioner granting the latter to these complainants, in the absence of any countervailing proofs they are to be deemed, in judgments of law, its rightful owners and entitled to whatever right it confers.

As this invention, on the face of the papers, antedates those described in the patents set up by the respondents, and there being no proof of a prior invention of the kind by any one else, there can be no struggle between the parties here as to who was first in this field of discovery. The remaining inquiries are, is the improvement novel? is it useful? did Henshaw invent it? and have the respondents infringed?

On the first three inquiries the patent itself is prima facie evidence in the affirmative, and one of the witnesses, well qualified to speak on the subject, testified that it was new. There is no evidence to counteract this proof. Whatever was introduced to show the state of the art can have no effect on the case beyond the aid it may give the court in construing the patent. It can not be permitted to defeat the suit by antedating the invention, as that issue is not raised by the pleadings. But in the judgment of the court no article or device presented by the evidence, or specimen of hooks introduced on the trial, antedates this invention. The truss hook with a spring enclosed in a tumbler, and the one with a spring in the socket, are both differently arranged. The springs are both behind the joint-pin, and are not held by recesses sunk into the arm of the hook, and it will be seen when we come to the question of utility, that this difference, though apparently slight, is in reality not merely formal but substantial. I have no doubt on the question of novelty. On the proofs as they stand, the improvement must be declared new. Its utility is equally clear, at least in one aspect, and that is sufficient to support the patent on this point. The very struggle of the parties in this suit, the complainants for the exclusive, and the respondents for the unrestrained, right to manufacture this kind of hook is ample evidence that it is of some utility. I agree with the counsel for the respondents that the truss hooks, with springs in the rear of the joint pins, especially the one in a vertical tumbler, appear to be much more substantial and perfect articles. But the demand for the patented article involved in this suit is evidence that it is preferred over the truss hooks. Doubtless, the reason is that they can be manufactured and sold at a cheaper rate. Cheapness generally commends an article to the American public.

Did Henshaw invent the article in the sense of the patent law? The point on which this question is open to inquiry in this suit, is that which relates to the fact whether or not it required invention. In disposing of this branch of the case, it will be necessary to examine the specification and see what device it covers. This can be done by giving a construction to the claim, for it evidently aimed to state the invention in brief terms, though it must be confessed that it is done in an obscure way. It is often the misfortune of inventors to have their specifications drawn with very imperfect skill, but courts have long exercised great liberality in giving construc-

tion to these instruments. It may well be doubted whether their indulgence has not gone too far in this direction, and their efforts to save the rights of inventors in particular cases been perverted into an assumed license to indulge in loose descriptions. The present specification requires the application of the liberal rules of construction in order to an intelligible understanding of the claim, and I see no reason why they should not be applied, especially in view of the settled practice of the courts. The claim is: "What is claimed as the invention of the said Henshaw is, locating the spring of a snap hook, substantially as shown and described, so as to act upon points intermediate between the hinge and hook proper, in combination with forming recesses for holding the spring, as set forth." Read literally and apart from the body of the specification, this would be both unintelligible and obscure. The first part of the sentence refers to the arrangement of the spring. It is placed in front of the hinge pin instead of the rear. When so arranged, it is combined with the recesses for holding it, which are new. This is a new organization of the hook and spring, combined with a new element or device for holding the spring in place. The statement in the claim, that locating the spring in the manner described is combined with forming the recesses, is mere absurdity. But a glance at the specification and drawings shows at once what really was meant.

It is urged that this transposition of the spring, in connection with the simple device of sockets for holding it in place so that it can perform the desired function, is a merely colorable change of the old snap hook, requiring no invention, and therefore not patentable. But the change effects palpable and useful results, else why is there a struggle for its use or application to articles of this character? Whenever a change or device is new, and accomplishes beneficial results, courts look with favor upon it. The law, in such cases, has no nice standard by which to gauge the degree of mental power or inventive genius brought into play in originating the new device.

A lucky casual thought involving a comparatively trifling change, often produces decided and useful results, and though it be the fruit of a very small amount of inventive skill, the patent law extends to it the same protection as if it had been brought forth after a lifetime devoted to the profoundest thought and the most ingenious experiment to attain it. In the present case the degree of ingenuity employed in producing this improvement was undoubtedly small but I have no doubt that it is entitled to the protection of the law. The remaining question is, whether the respondents have infringed. The hook which they manufacture has a spring, the main coil of which is so placed that the hinge pin passes through it, but though only part of the coil is thus brought in front of the hinge pin yet the bearing points or feet of the spring are so located as to act on points intermediate between the hinge and hook proper, in substantially the same manner as the ends of the coil in Henshaw's invention.

These feet are held in and by recesses or sockets in the same manner as in Henshaw's. In other words, the spring as located and operating in combination with the recesses, the respondents' hook, embody the whole of Henshaw's invention, and accomplish the same result in the same way. It may be an improved form of Henshaw's invention, and if so, the new part or improvement is patentable; but this fact gives no right to use what was invented and patented by another.

A decree for an account and injunction must, therefore, be entered against the respondents. The decree for an account may be entered at once, and the accounting should be proceeded with, without delay, and completed on or before the first day of the next regular term of this court, at which time a final decree and injunction will be entered.